UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACOB T. EBERHART,
                      Plaintiff,

-v-

AMAZON.COM, INC.,
                      Defendant.

16-CV-8546 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Jacob T. Eberhart brought this lawsuit against Amazon.com, Inc. for injuries he suffered from a coffeemaker purchased on Amazon's website. Amazon moves for summary judgment. For the reasons that follow, the motion is granted.

**I.    Background**

This case arises out of an accident that Eberhart suffered in August 2015. According to the Complaint, Eberhart was washing his French press coffeemaker when the glass pot shattered. (Dkt. No. 1 ("Compl.") ¶¶ 16−18.) The shards of glass lacerated Eberhart's thumb, and he was taken to the hospital for emergency medical treatment. (Compl. ¶¶ 20−22.) Eberhart alleges that he suffered nerve damage and, as a result, potentially permanent limitations on the use of his thumb. (Compl. ¶¶ 28−34.)

At this stage of the litigation, however, the question is not whether or how Eberhart was injured. Rather, the issue is whether Amazon—the website from which Eberhart bought the coffeemaker[1]—is legally responsible for injuries caused by the product's alleged defect. It is undisputed that Amazon neither manufactured nor designed the coffeemaker. (Dkt. No. 65

---

[1] The parties dispute whether Eberhart or his mother purchased the coffeemaker. (Dkt. No. 65 ¶¶ 9−10.) That dispute is immaterial to the Court's resolution of Amazon's motion.

("CSOF") ¶ 11.) Eberhart argues that Amazon sold the coffeemaker and, even if it did not, it is legally liable for defective products sold by third parties through its website. (*See* Dkt. No. 66 at 5−13.) Amazon states that it did not sell the coffeemaker to Eberhart; it merely provides an online marketplace and, in some instances, logistics services to shippers. Amazon argues that it cannot be held liable for the torts of third-party sellers, and it moves for summary judgment on that basis.

## II. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must 'set out specific facts showing a genuine issue for trial' . . . ." *Toshiba Corp. v. Am. Media Int'l, LLC*, No. 12 Civ. 800, 2012 WL 3822759, at *4 (S.D.N.Y. Sept. 4, 2012) (quoting Fed. R. Civ. P. 56(e)). The moving party is entitled to summary judgment whenever "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

The court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604

F.3d 732, 740 (2d Cir. 2010). However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Great Am. Ins. Co.*, 607 F.3d at 292 (citations omitted) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

**III.    Discussion**

Eberhart asserts five causes of action against Amazon: strict products liability, negligence, vicarious liability for the manufacturer's negligence, breach of express warranty, and misrepresentation. (Compl. ¶¶ 24−103.) These counts are not additive; rather, each states an alternative theory of liability.

As both parties direct their briefing to New York law, the Court applies New York law to Eberhart's claims.[2]

**A.    Facts Not Subject to Genuine Dispute**

Amazon operates an online marketplace at www.amazon.com. (CSOF ¶ 1; Dkt No. 47-2 ("Poad Aff.") ¶ 5.) Amazon sells some of its own products on its marketplace, but a significant portion of the products on amazon.com are sold by third-party sellers. (CSOF ¶ 1; Poad Aff. ¶¶ 5, 7.) Amazon requires all third-party sellers to agree to Amazon's "Amazon Services Business Solutions Agreement" ("BSA"), which explains that Amazon offers "a suite of optional services for sellers." (Dkt. No. 47-6; *see also* CSOF ¶¶ 3−4; Poad Aff. ¶ 9.) Under the terms of the BSA, third-party sellers are responsible for deciding what to sell, sourcing their products,

---

[2]    Because Eberhart is a citizen of New York, Amazon is a citizen of Washington and Delaware, and the matter involves more than $75,000 in damages (*see* Compl. ¶ 1), subject matter jurisdiction is proper under 28 U.S.C. § 1332.

providing product descriptions, setting the prices for their products, and packaging their products (or ensuring their products are properly packaged). (CSOF ¶ 5; Poad Aff. ¶ 10.)

If a seller chooses to pay to participate in Amazon's "Fulfillment by Amazon" ("FBA") program, Amazon will store the seller's inventory in an Amazon fulfillment center and, upon receipt of an order, will place the product in a shipping container and deliver it to a shipper. (CSOF ¶ 8; Poad Aff. ¶ 16.) FBA participants retain title to their products and pay for storage space. (*Id.*)

The coffeemaker that caused Eberhart's injury was purchased on amazon.com, where it was described as a "CoffeeGet 6 cup 27 oz. French Press Coffee Maker with thick heat resistant glass." (Compl. ¶ 11; Poad Aff. ¶ 4.) Amazon offers evidence that the coffeemaker was offered for sale by a company operating under the name "CoffeeGet." (CSOF ¶¶ 7, 9; Poad Aff. ¶¶ 3−4; Dkt. No. 47-5.) While Eberhart formally denies that CoffeeGet sold him the coffeemaker (*see* CSOF ¶ 7), he offers no evidence beyond unsubstantiated speculation. Amazon has also offered evidence, in the form of an affidavit and deposition testimony from Amazon General Manager Chris Poad, that CoffeeGet participated in Amazon's FBA program and, consequently, Amazon never took title to the coffeemaker. (CSOF ¶¶ 8, 11; Poad Aff. ¶¶ 11, 13, 16; Dkt. No. 47-3 at 21:7−17, 106:2−18.) Amazon did not write or develop the product detail page for the coffeemaker. (CSOF ¶ 11; Poad Aff. ¶¶ 11, 13; Dkt. No. 47-3 at 69:5−22.) As to all of these facts, Eberhart offers no evidence on which a reasonable jury could base a contrary finding.

### B.    Strict Products Liability

The instant case poses a question that has not been directly answered by the New York Court of Appeals: Is an "online marketplace" such as Amazon subject to strict products liability? As this Court is sitting in diversity, its task is not to answer the question for itself in the

first instance, but rather to predict how the New York Court of Appeals would decide the issue. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

The Court begins with decisional law of the New York Court of Appeals. In New York, "[i]t is well settled that a manufacturer of defective products . . . may be held strictly liable for injuries caused by its products, regardless of privity, foreseeability or due care." *Finerty v. Abex Corp.*, 27 N.Y.3d 236, 241 (2016). And in *Sukljian v. Charles Ross & Son Co.*, the Court of Appeals extended strict liability to "certain sellers, such as retailers and distributors," for "products . . . sold in the normal course of business." 69 N.Y.2d 89, 95 (1986). But for any "manufacturer, retailer or distributor" of a defective product, strict liability applies only to those entities that are "within the distribution chain."[3] *Finerty*, 27 N.Y.3d at 241−42.

---

[3] One could read *Finerty* as creating two avenues to liability: either (1) being "within the distribution chain," or (2) "actually plac[ing] the [defective product] into the stream of commerce." *Finerty*, 27 N.Y.3d at 241. However, because the *Finerty* court appears to use these phrasings interchangeably, they are better understood as alternative articulations of the same concept. *Compare id.* ("It is well settled that a manufacturer of defective products who places them into the stream of commerce may be held strictly liable"), *with id.* at 242 ("[A]bsent any indication that [the defendant] was in the distribution chain, it is of no moment that [the defendant] exercised control over its trademark."). Furthermore, the chain-of-distribution requirement—although most clearly and most recently articulated in *Finerty*—enjoys a long pedigree in both the New York Court of Appeals and New York's intermediate appellate courts. *See, e.g.*, *Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 53 (2014) ("Where a plaintiff is injured as a result of a defectively designed product, the product manufacturer or others in the chain of distribution may be held strictly liable for those injuries."); *Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 411 (1985) ("The tort remedy [of strict products liability] permits the injured plaintiff to seek redress from remote parties in the distributive chain regardless of privity."); *Dann v. Family Sports Complex, Inc.*, 997 N.Y.S.2d 836, 838 (App. Div. 3d Dep't 2014) (holding that defendants "cannot be held liable under" a theory of strict products liability "because they are outside the manufacture, sale and distribution chain"); *Laurin Mar. AB v. Imperial Chem. Indus. PLC*, 752 N.Y.S.2d 855, 855 (App. Div. 1st Dep't 2003) ("A party that is outside of the manufacturing, selling or distribution chain . . . cannot be held liable for . . . strict products liability."); *Spallholtz v. Hampton C.F. Corp.*, 294 A.D.2d 424, 424 (N.Y. App. Div. 2d Dep't 2002) ("It is well settled that 'liability may not be imposed for breach of warranty or strict products liability upon a party that is outside the manufacturing, selling, or distribution chain.'" (quoting *Joseph v. Yenkin Majestic Paint Corp.*, 690 N.Y.S.2d 611, 612 (App. Div. 2d Dep't 1999))); *Porter v. LSB Indus., Inc.*, 600 N.Y.S.2d 867, 871 (App. Div. 4th Dep't 1993)

The Court of Appeals has not precisely identified the nodes that constitute a product's chain of distribution. *See McCormack v. Safety-Kleen Sys., Inc.*, 927 N.Y.S.2d 817, 2011 WL 1643590, at *4 (Sup. Ct. N.Y. Co. 2011) ("Neither of the parties has provided the court with a New York definition of 'distributor' as it applies to strict products liability, and the court could not find a statute or case on point."). Based on the available "persuasive data," *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940), the Court concludes that, in this case, Amazon was not within the coffeemaker's chain of distribution such that Amazon could be considered a "distributor" subject to strict liability.

First, regardless of what attributes are necessary to place an entity within the chain of distribution, the failure to take title to a product places that entity on the outside. A survey of New York cases reveals that in the vast majority of opinions, "whenever the term 'distributor' was used, or a distribution contract was discussed, the terms were used in the context of an entity selling the product in question, the product having been purchased by the distributor either from the manufacturer or a distributor higher in the selling chain between the manufacturer and the ultimate consumer." *McCormack*, 2011 WL 1643590, at *5 (collecting cases). For example, in *Spallholtz v. Hampton C.F. Corp.*, the Appellate Division of the New York Supreme Court, Second Department, held that a company's "isolated act of arranging for a temporary exchange between two companies of [an allegedly defective] machine for another machine and for the shipment of the machine does not make it a distributor." 294 A.D.2d 424, 424 (N.Y. App. Div. 2d Dep't 2002). In contrast, in an (apparently related) appeal with respect to a different defendant, the court affirmed the denial of summary judgment because the plaintiff had

---

("Products liability cannot be imposed on a party that is outside the manufacturing, selling or distribution chain.").

"established issues of fact regarding whether the appellant owned the subject machine." *Spallholtz v. Hampton C.F. Corp.*, 294 A.D.2d 424, 425 (N.Y. App. Div. 2d Dep't 2002).

The requirement that a distributor must, at some point, own the defective product is reinforced by the by the *Restatement (Third) of Torts: Products Liability*.[4] The *Restatement* states that "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product" is subject to strict liability. *Restatement (Third) of Torts: Prod. Liab.* § 1 (1998). Although the *Restatement* does not explicitly include a title requirement, every example of a "seller or distributor" that the *Restatement* supplies is an entity that owns the product it later sells or distributes, to wit: "manufacturers, wholesalers, . . . retailers[,] . . . lessors, bailors, and those who provide products to others as a means of promoting . . . such products or some other commercial activity." *Id.* § 20. Furthermore, the *Restatement* excludes "product distribution facilitators"—*i.e.*, "[p]ersons assisting or providing services to product distributors," such as advertisers, sales personnel, and auctioneers—from the definition of distributors. *Id.* § 20 cmt. g.

The Court has identified one case, *Brumbaugh v. CEJJ, Inc.*, in which the Third Department held strictly liable a manufacturer's "exclusive 'marketing agent'" for injuries caused by a defective product for which the agent had never "take[n] actual possession, title or control." 547 N.Y.S.2d 699, 700−01 (App. Div. 3d Dep't 1989). In so holding, the *Brumbaugh* court applied a rule that strict liability may be imposed "where the defendant actively ushers a

---

[4] Although the Court of Appeals has not formally or wholly adopted the *Third Restatement*, the *Restatements* "ha[ve] served to form the bedrock principles in New York law for strict products liability," *Rickicki v. Borden Chem., Div. of Borden, Inc.*, 159 A.D.3d 1457, 1464 (N.Y. App. Div. 4th Dep't 2018), and at least one department of the Appellate Division has favorably cited § 20 of the *Third Restatement*, *see Rivera-Emerling v. M. Fortunoff of Westbury Corp.*, 721 N.Y.S.2d 653, 655 (App. Div. 1st Dep't 2001).

7

product into the initial market." *Id.* at 701. But in light of the Court of Appeals' more recent decisions recognizing a chain-of-distribution requirement, *see Finerty*, 27 N.Y.3d at 241−42; *Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 53 (2014), it is not entirely clear whether the full reach of *Brumbaugh* remains binding law even in the Third Department. Indeed, *Finerty* explicitly rejected the proposition that strict liability may be imposed on an entity that merely "facilitat[es] the distribution of" a defective product simply because that entity is in "the best position to exert pressure on" the product's manufacturer. 27 N.Y.3d at 242 (emphasis omitted).

Even assuming that *Brumbaugh* remains good law, its logic would extend strict liability only to an entity that provides "the sole conduit by which [defective products] enter the marketplace" such that "it is fair to say that [the marketer] is a mandatory link in [the] distributive chain." 547 N.Y.S.2d at 701. Eberhart has adduced no evidence from which a reasonable jury could draw such a conclusion about Amazon's role in facilitating purchases of CoffeeGet coffeemakers.

Second, as it is not a distributor, Amazon is better characterized as a provider of services. In New York, "[t]he general rule, subject to some exceptions, is that where a particular defendant did not manufacture, distribute or sell a product, and that defendant's conduct consisted primarily of the rendition of services, strict products liability . . . will not apply." 1 Michael Weinberger, *N.Y. Products Liability 2d* § 3:2 (2018) (citing *Milau Assocs. v. N. Ave. Dev. Corp.*, 42 N.Y.2d 482 (1977)). Here, Amazon provided three services: (1) maintaining an online marketplace, (2) warehousing and shipping goods, and (3) processing payments. None of these service activities subjects Amazon to strict liability. *Cf. Van Iderstine v. Lane Pipe Corp.*, 455 N.Y.S.2d 450, 452−53 (App. Div. 4th Dep't 1982) (explaining that providing public spaces such as highways, pathways, and parking lots is a service, not "the manufacture or sale of a product");

*McCormack*, 2011 WL 1643590, at *6 (holding that "in order to be found liable under a theory of strict products liability . . . , [an] entity must have been engaged in actively and regularly selling the substance, not simply transporting it for other sellers"); *Joseph v. Yenkin Majestic Paint Corp.*, 661 N.Y.S.2d 728, 730 (Sup. Ct. 1997) (holding that a party who performs solely a "billing or bookkeeping function" is not a distributor), *aff'd in part, appeal dismissed in part*, 690 N.Y.S.2d 611 (App. Div. 2d Dep't 1999).

Finally, it appears that every court to consider the question of Amazon's liability has concluded that Amazon is not strictly liable for defective products sold on its marketplace. *See Allstate N.J. Ins. Co. v. Amazon.com, Inc.*, No. 17 Civ. 2738, 2018 WL 3546197, at *5−12 (D.N.J. July 24, 2018) (applying New Jersey law); *Fox v. Amazon.com, Inc.*, No. 16 Civ. 3013, 2018 WL 2431628, at *8 (M.D. Tenn. May 30, 2018) (applying Tennessee law); *Erie Ins. Co. v. Amazon.com Inc.*, No. 16 Civ. 2679, 2018 WL 3046243, at *1−3 (D. Md. Jan. 22, 2018) (applying Maryland law); *Oberdorf v. Amazon.com, Inc.*, 295 F. Supp. 3d 496, 499−501 (M.D. Pa. 2017) (applying Pennsylvania law); *Stiner v. Amazon.com Inc*, No. 15 Civ. 185837, 2017 WL 9751163, at *5−7 (Ohio Com. Pl. 2017) (applying Ohio law); *see also Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 885 (Fed. Cir. 2017) (holding that Amazon is not a "seller" under the Copyright Act, 17 U.S.C. § 106); *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541−42 (D. Md. 2016) (dismissing a Maryland-law negligence claim against Amazon); *Inman v. Technicolor USA, Inc.*, No. 11 Civ. 666, 2011 WL 5829024, at *5−6 (W.D. Pa. Nov. 18, 2011) (holding that eBay is not strictly liable as a "seller").

The Court cites these other cases—all applying different states' laws to different sets of facts—with due caution. However, to the extent that the New York Court of Appeals would consider the laws and judicial opinions of other jurisdictions, it would encounter an emerging

9

consensus against construing Amazon as a "seller" or "distributor"—and, therefore, against holding Amazon strictly liable for defective products sold on its website.

Thus, Amazon is entitled to summary judgment as to Eberhart's strict liability claim.

### C.    Other Theories of Liability

Eberhart's other theories of liability are similarly unavailing. As to his claims for negligence, "[i]t is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff." *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976). "One common element to any products liability claim"—whether sounding in strict liability or negligence—"is that the plaintiff's alleged injury must have been caused by a product that the defendant sold or placed into the stream of commerce." *Rizzo v. Applied Materials, Inc.*, No. 15 Civ. 557, 2016 WL 1122063, at *2 (N.D.N.Y. Mar. 22, 2016) (citing *Healy v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996)).

Because Amazon did not manufacture, sell, or otherwise distribute the allegedly defective coffeemaker to Eberhart, it owed no duty to him with respect to that product. *See, e.g.*, *Townley v. Emerson Elec. Co.*, 702 N.Y.S.2d 728, 729 (N.Y. App. Div. 4th Dep't 2000) (holding that because the defendant "did not design, manufacture or sell the allegedly defective product," it "could not be held liable for . . . negligence"). And Eberhart does not allege that Amazon acted negligently with respect to a *service* that it provided to him.[5] Therefore, Amazon is entitled to summary judgment on Eberhart's negligence claims.

---

[5]    To the extent that Eberhart seeks to assert a claim that Amazon is liable, either directly or vicariously, for the content it permitted CoffeeGet to post on amazon.com, such a claim is preempted by § 230 of the Communications Decency Act. *See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."); *see also, e.g.*, *Oberdorf*, 295 F. Supp. 3d at 502.

As to Eberhart's claims for breach of express warranty and misrepresentation, the Court accepts Amazon's (unrebutted) argument that because Amazon did not make any statement about the coffeemaker, it cannot be held liable on these claims. (*See* Dkt. No. 49 at 28−29; Dkt. No. 61 at 10.) Indeed, both causes of action require some statement on the part of the defendant. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("To state a claim for breach of express warranty under New York law, a plaintiff must allege . . . the existence of a material statement amounting to a warranty . . . ."); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011) ("[I]n a claim for fraudulent misrepresentation, a plaintiff must allege 'a misrepresentation or a material omission of fact which was false and known to be false by defendant . . . .'" (quoting *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996))). Therefore, Amazon is entitled to summary judgment on Eberhart's warranty and misrepresentation claims.

## IV. Conclusion

For the foregoing reasons, Amazon's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 45 and to close this case.

SO ORDERED.

Dated: August 27, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge